# Illinois Official Reports

## Appellate Court

---

**People v. Thomas, 2017 IL App (3d) 150542**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM S. THOMAS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0542 |
| Filed | October 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 10-CF-659; the Hon. Paul Gilfillan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and R. Christopher White, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Lawrence M. Bauer, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justices O'Brien and Schmidt concurred in the judgment and opinion. |

¶ 1 Defendant, William S. Thomas, appeals from the denial of his motion for forensic testing. He argues that his motion set forth each of the elements required for such testing to be granted and thus requests this court reverse the Tazewell County circuit court's judgment. We find that any result of the proposed testing would not have the potential to produce evidence that would raise a reasonable probability that defendant would have been acquitted had he proceeded to trial. We therefore affirm the circuit court's denial of defendant's motion.

¶ 2                                                    FACTS

¶ 3 Defendant pled guilty on June 24, 2011, to one count of being an armed habitual criminal (720 ILCS 5/24-1.7 (West 2010)). As a part of the factual basis for the plea, the State submitted certified copies of defendant's previous convictions for burglary, aggravated battery, and unlawful possession of a weapon by a felon.

¶ 4 The State further declared that Genie Hopkins would testify that she saw defendant with a green and orange sawed-off shotgun. That shotgun was later recovered from a vehicle being driven by defendant on or about November 26, 2010. In a videotaped interview with police, defendant admitted to purchasing and possessing that sawed-off shotgun. Following the factual basis, defense counsel responded: "Your [H]onor, that's a very, very truncated version of the case, but yes, we agree that they could present that evidence." The court accepted defendant's plea and, at a later date, sentenced him to a term of 18 years' imprisonment.

¶ 5 Following his plea hearing, defendant filed numerous motions seeking to withdraw the plea and to obtain new representation. In one of those motions, defendant alleged that his videotaped confession was involuntary because he was under the influence of alcohol and Xanax when the statements were made. Defendant attached to one motion an affidavit from Hopkins, in which she admitted to perjuring herself.

¶ 6 On June 28, 2012, just over a year after defendant's plea hearing, the court held a hearing on defendant's motion to withdraw his guilty plea. At the hearing, Hopkins testified that defendant is the father of her child and her boyfriend of six years. Hopkins testified that around November 26, 2010, she and defendant had been arguing and defendant was threatening to leave her. Hopkins decided to frame defendant for possession of firearms. She first put six Xanax into three beers that defendant drank. She then retrieved the sawed-off shotgun from another residence and brought it to the home she shared with defendant. When defendant saw Hopkins with the sawed-off shotgun, he tried to wrestle it away from her. In the ensuing scuffle, the shotgun struck Hopkins in the face, causing a gash on her forehead. Hopkins then put the gun into her Jeep. Hopkins later asked an acquaintance to hit her with a pistol to make it look like defendant had battered her. She then reported to the police that defendant had kidnapped their son and was in possession of multiple firearms. She recanted her story about the kidnapping prior to defendant's guilty plea. She did not recant the portion of her story relating to the firearms because she feared being charged herself.

¶ 7 Defendant testified that he asked his original defense attorney, Fred Bernardi, to conduct DNA testing on the sawed-off shotgun, but Bernardi refused. According to defendant, Bernardi also refused to introduce expert testimony regarding the effects of Xanax. Defendant insisted that his confession to police was involuntary.

¶ 8       Bernardi testified that he did not seek DNA testing on the sawed-off shotgun because defendant had consistently acknowledged, both in a videotaped interview with police and in jail phone recordings, that he possessed the weapon.

¶ 9       The court denied defendant's motion to withdraw the plea. The court rejected the notion that counsel had been ineffective, observing: "[Defendant] knew he couldn't prevail at trial, or the likelihood was infinitesimal." The court outright rejected Hopkins's testimony, stating: "[Hopkins] has no credibility at all. The story that she put forth today in front of the Court was completely a manufactured story, [and] was an insult to the Court's intelligence. She clearly lied today again. She's a habitual liar." The court declared that Bernardi was the only credible witness.

¶ 10      On appeal, this court granted appointed counsel's motion to withdraw and affirmed the court's denial of defendant's motion to withdraw the guilty plea. *People v. Thomas*, No. 3-12-0544 (Jan. 1, 2014) (unpublished summary order under Supreme Court Rule 23(c)).

¶ 11      On July 2, 2015, defendant filed a *pro se* motion for DNA testing, the only subject of the present appeal. In the motion, defendant sought DNA testing on the green and orange sawed-off shotgun, alleging that he never touched the weapon and that Hopkins and two other individuals complicit in the scheme to frame him likely did touch the weapon. Defendant asserted that the presence of Hopkins's DNA or that of her two alleged cohorts would prove that she placed the weapon in the Jeep without defendant's knowledge. The court denied defendant's motion.

¶ 12                                          ANALYSIS

¶ 13      On appeal, defendant argues that his motion for DNA testing satisfied each of the elements required for such testing to be granted. We disagree, finding that no reasonable probability exists that any potential test results would have led to an acquittal had defendant proceeded to trial instead of pleading guilty.

¶ 14      Section 116-3 of the Code of Criminal Procedure of 1963 (Code) sets forth the procedures a criminal defendant must follow in order to seek and obtain postconviction forensic testing. 725 ILCS 5/116-3 (West 2014). While the Code requires defendants to satisfy no fewer than five distinct elements, only one is relevant to the present appeal:

          "(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

               (1) the result of the testing has the scientific potential to produce new, noncumulative evidence (i) materially relevant to the defendant's assertion of actual innocence when the defendant's conviction was the result of a trial, even though the results may not completely exonerate the defendant, or (ii) that would raise a reasonable probability that the defendant would have been acquitted if the results of the evidence to be tested had been available prior to the defendant's guilty plea and the petitioner had proceeded to trial instead of pleading guilty, even though the results may not completely exonerate the defendant[.]" *Id.*

¶ 15      We note initially that defendant argues the incorrect legal standard on appeal. Throughout his briefs, defendant asserts that "[t]he testing requested has the potential to produce non-cumulative evidence materially relevant to [defendant's] claim of actual innocence."

Defendant then establishes the definition of "materially relevant" and argues that the potential test results in this case would be so relevant. Of course, defendant's argument references the language of subsection (c)(1)(i), which only applies "when the defendant's conviction was the result of a trial." 725 ILCS 5/116-3(c)(1)(i) (West 2014). Subsection (c)(1)(ii) governs the present situation, wherein defendant's conviction stemmed from a guilty plea. 725 ILCS 5/116-3(c)(1)(ii) (West 2014). It requires defendant not to show material relevance, but the potential for a "reasonable probability" that defendant would have be acquitted had he proceeded to trial. *Id.*

¶ 16 Effective August 15, 2014, the General Assembly amended section 116-3 to make forensic testing available to criminal defendants who had pled guilty. Pub. Act 98-948 (eff. Aug. 15, 2014) (amending 725 ILCS 5/116-3). Previously, such testing was available only to defendants who had proceeded to trial. See 725 ILCS 5/116-3 (West 2012). Because of this relatively recent amendment, Illinois courts have not yet established the precise bounds of the "reasonable probability" standard. In any event, it seems clear that the "reasonable probability" standard of subsection (c)(1)(ii) is necessarily a higher threshold than the "materially relevant" standard of subsection (c)(1)(i). Test results are materially relevant so long as they "significantly advance" a claim of actual innocence. *People v. Savory*, 197 Ill. 2d 203, 213 (2001). However, to satisfy subsection (c)(1)(ii), those tests results would have to advance a claim of innocence so far that an acquittal becomes a reasonable probability.

¶ 17 Clearing such a hurdle is even more difficult in defendant's case, given the strength of the State's evidence. To obtain a conviction for being an armed habitual criminal, the State needed only to prove that defendant possessed a firearm and that he had two prior convictions of the type listed in the armed habitual criminal statute. 720 ILCS 5/24-1.7 (West 2010). In its factual basis, the State presented three key pieces of evidence: (1) Hopkins would testify that she saw defendant with the sawed-off shotgun, (2) the sawed-off shotgun was found in a vehicle being driven by defendant, and most significantly, (3) defendant admitted to police in a videotaped confession that he had possessed the sawed-off shotgun. Further, defendant had apparently admitted to possessing the sawed-off shotgun in a phone conversation he had while in jail.

¶ 18 To be sure, Hopkins later recanted her statement that defendant possessed the sawed-off shotgun. However, there is no way to know whether Hopkins would have recanted that statement prior to defendant's hypothetical trial. See 725 ILCS 5/116-3(c)(1)(ii) (West 2014) (requiring the potential that test results raise a reasonable probability of acquittal at trial had those results "been available prior to the defendant's guilty plea"). Still, even if Hopkins had testified to her most recent version of events, the State would have impeached her testimony with her earlier statements accusing defendant of possessing the sawed-off shotgun. Further, the hearing on defendant's motion to withdraw his plea in this case provides the blueprint for how a finder of fact at defendant's trial would have taken Hopkins's changed story. As the circuit court put it, that version of events "was completely a manufactured story, [and] was an insult to the Court's intelligence."

¶ 19 Regardless, defendant insists a DNA result that did not reveal his DNA on the sawed-off shotgun would undermine Hopkins's previous statements that he possessed the weapon. Moreover, he insists that the presence of Hopkins's DNA or that of her two accomplices would substantiate his claim that he was framed. Such results, if raised at trial, however, would not create a reasonable likelihood that defendant would be acquitted. It would be decidedly unlikely that a trier of fact would outright reject defendant's multiple confessions to possessing

the sawed-off shotgun in favor of the implausible version of events in which the defendant was framed. Moreover, test results showing a lack of defendant's DNA would not raise a reasonable probability of acquittal at trial, as there could be no guarantee that defendant's possession of the shotgun would result in a transfer of DNA. Indeed, possession of a weapon does not necessarily include the physical handling of the weapon itself. *E.g.*, *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (delineating elements of constructive possession of a weapon).

¶ 20    In coming to this conclusion, we note that throughout his briefs on appeal, defendant asserts that he has repeatedly denied possessing the sawed-off shotgun "and ha[d] continued to maintain his innocence." Of course, those repeated denials represent only the more recent past. Previously, defendant pled guilty, thus admitting he possessed the sawed-off shotgun, and also admitted to police on videotape that he was in possession of the sawed-off shotgun. Defendant insists that his confession was induced by the effects of Xanax. This appeal, however, concerns only the circuit court's denial of defendant's motion for forensic testing. It is not an opportunity for defendant to challenge the voluntariness of his confession, the performance of his attorney, or the voluntariness of his guilty plea. Defendant was obligated to show, based on the record, that certain forensic results, had they been available for a trial, could have raised a reasonable probability of an acquittal. He has failed to do so.

¶ 21                                         CONCLUSION

¶ 22    The judgment of the circuit court of Tazewell County is affirmed.

¶ 23    Affirmed.