# Illinois Official Reports

## Appellate Court

---

**_People v. Cocroft_, 2020 IL App (1st) 180056**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DESHAWN COCROFT, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-18-0056 |
| Filed | November 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-10589; the Hon. Arthur F. Hill Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Meredith N. Baron, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Tyler J. Cox, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Presiding Justice Mikva and Justice Griffin concurred in the judgment and opinion. |

¶ 1        Following a 2009 jury trial, defendant Deshawn (or DeShaun) Cocroft was convicted of two counts of predatory criminal sexual assault and sentenced to consecutive prison terms of 25 and 20 years. We affirmed on direct appeal (*People v. Cocroft*, No. 1-09-1962 (2011) (unpublished order under Illinois Supreme Court Rule 23)) and affirmed the 2012 summary dismissal of defendant's postconviction petition challenging his convictions (*People v. Cocroft*, 2012 IL App (1st) 121013-U). Defendant now appeals from the denial of his petition for DNA testing under section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2018)), contending that counsel appointed for him upon that petition failed to provide reasonable assistance by not amending or supplementing his *pro se* petition. For the reasons stated below, we affirm.

¶ 2                                I. JURISDICTION

¶ 3        In April 2016, defendant filed a petition for DNA testing under section 116-3. The circuit court denied the petition on December 18, 2017, and defendant filed his notice of appeal that day. Thus, we have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. July 1, 2017) governing appeals from final judgments in criminal cases. *People v. Savory*, 197 Ill. 2d 203, 210-11 (2001) (finding denial of section 116-3 petition to be final and appealable under Rule 603).

¶ 4                                II. BACKGROUND

¶ 5        Defendant was arrested and charged in May 2007 with, in relevant part, multiple counts of predatory criminal sexual assault allegedly committed against S.H. on or about January 26, 2003, when he was at least 17 years old and she was less than 13 years old.

¶ 6        Shortly before the March 2009 trial, defense counsel and defendant himself told the court that defendant was demanding independent DNA testing. The court told defendant that he could do so, but the trial would not be postponed. Defendant exercised his right to proceed *pro se*. When he told the court that he was not ready for trial, the court ruled that the trial would proceed as scheduled. Maintaining that he was not prepared, defendant refused to participate in the trial. He did not make an opening statement or closing argument, cross-examine any State witness, call any defense witness, present any defense evidence, or testify himself.

¶ 7        At trial, S.H. testified that she was 11 years old in January 2003. Defendant was a guest in her home on the night in question, introduced to her as her cousin. At various times that night, defendant exposed his penis to her, sexually abused her in a bedroom, and sexually assaulted her twice in the bedroom of Q.M., a young girl in her household, including once in Q.M.'s presence. During the last assault, defendant sucked on S.H.'s neck. After the last attack, S.H. immediately reported defendant's actions to her older sister. Defendant left the home, the police were called, and S.H. was brought to the hospital.

¶ 8        Q.M., seven years old in January 2003, testified to seeing defendant in her bedroom exposing his penis and placing his mouth on S.H.'s neck. S.H.'s older sister testified to knowing defendant before the night in question. She saw defendant exit Q.M.'s bedroom, saw defendant and S.H. exit Q.M.'s bedroom several minutes later, and an upset S.H. then reported

defendant's assault. Michelle Silas, an adult in S.H.'s household, testified that she sat with defendant in the kitchen for some time that night. Later, she heard S.H. crying, asked S.H. what happened, and S.H. told her of defendant's attack. Both Silas and S.H.'s sister noticed a "hickey" on S.H.'s neck as she reported the attacks that had not been there earlier that night. A responding police officer testified that an upset and frightened S.H. gave a detailed account of defendant's attack, including naming him as the attacker, before going to the hospital.

¶ 9         The physician who examined S.H. at the hospital testified that she described the sexual assault and, consistent with her account, had a fresh "hickey" or bite mark on her neck and signs of sexual penetration. The bite mark was swabbed for a sexual assault kit, which was inventoried. Forensic scientists testified to DNA analysis of the neck swab, and one testified to a reasonable degree of scientific certainty that defendant's DNA matched DNA from the neck swab.

¶ 10        Based on this evidence, the jury found defendant guilty of two counts of predatory criminal sexual assault. The trial court then sentenced him to consecutive prison terms of 25 and 20 years.

¶ 11        On direct appeal, we held in relevant part that the trial court did not abuse its discretion by not continuing or rescheduling trial just before its commencement to allow defendant additional time to prepare. *Cocroft*, No. 1-09-1962, slip order at *20-22.

¶ 12        In his December 2011 *pro se* postconviction petition, defendant claimed in relevant part that he was deprived of the opportunity to confront a particular DNA analyst who performed part of the DNA analysis to which other forensic scientists testified at trial. In summarily dismissing the petition in February 2012, which this court later affirmed, the circuit court held in relevant part that this claim was meritless because defendant chose not to present evidence or a defense at trial, including not calling the analyst in question as a witness.

¶ 13        Defendant filed his *pro se* section 116-3 petition for DNA testing in April 2016, seeking mitochondrial DNA testing of a bedsheet that, he alleged, had been inventoried under a specified inventory number in January 2003. He alleged that mitochondrial DNA testing was (1) unavailable to him at the time and (2) a scientific method generally accepted within the relevant scientific community. He also alleged that the requested testing had the scientific potential to produce new evidence materially related to his claim of actual innocence even though the results may not completely exonerate him.

¶ 14        The State filed a motion to dismiss defendant's petition in January 2017, arguing that mitochondrial testing (1) "is not specific to one individual," as it "examines the maternal lineage of DNA," and (2) "was scientifically available" before defendant's trial though not conducted in this case. The State noted that defendant had "not indicated what he is looking for on the bedsheet" and that no semen was found in S.H.'s sexual assault kit while defendant's DNA was found on the bite mark swabbing. The State argued that defendant had not shown that the requested testing would be materially relevant to a claim of actual innocence. The "absence of his DNA on a bedsheet would not further his actual innocence claim, as it would not change or explain the fact that his DNA is on the victim's neck."

¶ 15        The circuit court appointed counsel for defendant in January 2017, and counsel reported in May and July of 2017 that he was reviewing the record to determine whether he would supplement the petition. Counsel stated in September 2017 that he would not file a response to the motion to dismiss but would argue *People v. Grant*, 2016 IL App (3d) 140211, in support of the petition.

¶ 16    The court held a hearing on the DNA petition and motion to dismiss in November 2017. Defense counsel rested on the petition's allegations and argued *Grant* for the proposition that "even though that evidence may be overwhelming, that still additional DNA testing could only benefit to make sure the right person is convicted" if a defendant claims actual innocence. The State argued that the petition failed to state a *prima facie* case when the entirety of the trial evidence is considered and that the requested testing would not be materially relevant because a favorable result of mitochondrial testing of the bedsheet would not "change the fact that the DNA testing at trial indicated that the neck swab recovered from the victim matched to the defendant's DNA." The State argued that *Grant* was distinguishable as "there was no DNA evidence in *Grant* to link the defendant to the crime. The Court actually in that case noted that significantly that there was no physical evidence linking the defendant to the sexual assault case." Counsel rebutted that defendant's DNA on S.H.'s neck was not definitive evidence of sexual assault and argued that because defendant was claiming innocence, "to have one sheet tested to insure he is the one is guilty would be of low cost to the State and something that should be done." The State argued that the DNA evidence here was decisive as "[i]t's either somebody else that did it all together or *** it didn't happen the way the victim said it happened." Counsel replied that "evidence that there was DNA of somebody else on that bed sheet could help find if there was another perpetrator."

¶ 17    The court denied the petition in December 2017. After reiterating the procedural history of the case, including the trial evidence, the court found that mitochondrial DNA testing "is not really specific to one individual" and "was available prior to defendant's trial, but was not utilized." Noting that defendant did "not specify what, if any, substance he wants tested," the court concluded "that the presence of other DNA profiles on the bedsheet or the absence of the defendant's DNA on the sheet would not refute the positive finding of the match of defendant's DNA on S.H.'s neck." Defense counsel made an oral motion to reconsider, arguing that defendant's "position is that he didn't do it, and that there could be some other DNA on the sheets that would indicate the real perpetrator." The court denied reconsideration, and this appeal timely followed.

¶ 18                                    III. ANALYSIS

¶ 19    On appeal, defendant contends that counsel appointed by the trial court to represent him on his section 116-3 petition for DNA testing failed to provide reasonable assistance by not amending or supplementing his *pro se* petition. He argues that the State's motion to dismiss argued that his petition "did not indicate what he was looking for on the sheet and did not establish 'that the testing would be materially relevant to his claim of actual innocence' " and that counsel did not amend or supplement the petition to remedy those shortcomings.

¶ 20    Section 116-3 authorizes postconviction forensic testing, including DNA testing and comparison, upon a defendant's petition if the evidence was not subject to the requested testing at the time of trial or if "additional testing utilizing a method that was not scientifically available at the time of trial" would provide "a reasonable likelihood of more probative results." 725 ILCS 5/116-3(a)(2) (West 2018). The defendant must make a *prima facie* case that (1) identity was the issue in his trial, and "(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." 725 ILCS 5/116-3(b)(2) (West 2018). The court shall order the requested testing if:

"(1) the result of the testing has the scientific potential to produce new, noncumulative evidence *** materially relevant to the defendant's assertion of actual innocence when the defendant's conviction was the result of a trial, even though the results may not completely exonerate the defendant ***; and

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3(c) (West 2018).

¶ 21 We "construe section 116-3 liberally to favor its purpose of making the criminal justice process more reliable by allowing, *where there is a reasonable basis*, the acquisition of sound scientific evidence that is probative on the issue of identity." (Emphasis in original.) *People v. LaPointe*, 2018 IL App (2d) 160432, ¶ 56. Identity is at issue when the perpetrator's identity is disputed or in question, and a defendant makes a sufficient showing that identity was at issue when he denied at trial that he committed the crime. *Grant*, 2016 IL App (3d) 140211, ¶ 18. Regarding chain of custody, a defendant may rely on conclusions and presumptions in his or her petition because the evidence sought to be tested will almost surely have been within the State's safekeeping rather than the defendant's. *LaPointe*, 2018 IL App (2d) 160432, ¶ 40. In evaluating the potential for producing new evidence materially relevant to an actual innocence claim, we must consider the strength of the trial evidence. *Id.* ¶ 45. Because a section 116-3 petition is a pleading in the nature of a civil complaint or petition for relief, we must accept as true and construe liberally the well-pleaded facts in the petition unless contradicted by the record, and our review of the denial of a section 116-3 petition is *de novo*. *Id.* ¶ 20.

¶ 22 A threshold matter in this case is whether counsel on the section 116-3 petition should be held to any level of assistance or standard of representation. The parties do not dispute that a defendant does not have a right to have counsel appointed on a section 116-3 petition. *People v. Love*, 312 Ill. App. 3d 424 (2000). Moreover, the parties acknowledge that this court has held that a defendant appointed counsel on a section 116-3 petition "may not complain of inadequate assistance"; that is, the "appointment of counsel did not carry with it a right to a particular level of assistance of counsel." *Id.* at 427. However, defendant contends that *Love* was wrongly decided, arguing that this court has found that a defendant appointed counsel on a section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)) is entitled to a certain level of assistance from counsel, despite having no right to appointed counsel on such a petition. *People v. Walker*, 2018 IL App (3d) 150527, ¶¶ 24-29.

¶ 23 Here, we need not resolve whether counsel on a section 116-3 petition is held to any particular standard of representation because we find that defendant could not show inadequate representation by this counsel on his petition under any standard. We find that counsel not filing an amended or supplemental petition did not prejudice defendant because no amendment could have overcome the petition's fundamental flaws. Counsel could not amend the petition to allege that identity was at issue because no such allegation could change or contradict the underlying facts from the record that the perpetrator's identity for the crimes at issue was not disputed at trial and that defendant did not at trial deny committing the crimes at issue.

¶ 24 As to counsel's alleged failure to amend or supplement the petition to allege material relevance, we must note that the *pro se* petition alleged material relevance. The petition was denied not because material relevance was not alleged but because it was not shown. Indeed, a review of the trial evidence shows that defendant's presumably desired outcome—that the DNA of someone other than himself, S.H., or Q.M. would be found on the bedsheet—would not be materially relevant to a claim of actual innocence. Four witnesses identified defendant

as being in S.H.'s home on the night in question, one of whom knew him before that night and another of whom spent some of that night sitting with him in the kitchen. S.H. and two other witnesses placed defendant in a bedroom with S.H. that night. One witness corroborated that defendant sexually abused S.H., including inflicting the neck mark, and two others saw that mark and noted that it had not been there earlier. A physician independently corroborated the fresh neck mark and corroborated a crucial part of S.H.'s account by documenting that she had signs of sexual penetration. Last but certainly not least, DNA evidence firmly linked defendant to the neck mark. In light of this evidence, we do not see a potential that finding DNA on the bedsheet that is not defendant's, S.H.'s, or Q.M.'s would show that someone other than defendant sexually assaulted S.H. on the night in question. As this court said in *LaPointe*, "if the requested testing connects the evidence to some unknown third person, it would not raise a reasonable probability that defendant would have been acquitted at trial." *LaPointe*, 2018 IL App (2d) 160432, ¶ 53.

¶ 25 In sum, we find that counsel could not, on this record and in good faith, add to the petition an allegation that identity was at issue or usefully expand on the existing allegation of material relevance. We conclude that counsel *could* do for defendant only what he *did* do: make arguments and cite caselaw to cast the allegations of the petition in the best light possible. Thus, counsel did not breach or fall short of whatever duty he had to defendant.

¶ 26                                    IV. CONCLUSION
¶ 27 Accordingly, the judgment of the circuit court is affirmed.

¶ 28 Affirmed.