2022 IL App (1st) 210914-U

No. 1-21-0914

Order filed September 26, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 97 CR 13441 |
| ANTHONY SMITH, | ) ) | Honorable Thomas J. Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court's judgment denying motion for forensic DNA testing under section 116-3 of the Code of Criminal Procedure (725 ILCS 5/116-3 (West 2020)) affirmed.

¶ 2    Defendant Anthony Smith appeals from the circuit court's judgment denying his motion for forensic DNA testing where eyewitness accounts indicated that objects handled by offender were also touched by others and offender was wearing gloves. For the reasons stated below, we affirm.

¶ 3    Pursuant to an "open" or non-negotiated guilty plea entered on April 7, 2003, defendant was sentenced to natural life in prison on three counts of murder and 30 years of imprisonment on three counts of attempt murder. Defendant filed a motion to withdraw his guilty plea, which was denied by the trial court. The judgment of the trial court was affirmed on direct appeal. *People v. Smith*, No. 1-04-0857 (2005) (unpublished order under Supreme Court Rule 23). On September 19, 2017, defendant filed a *pro se* Motion for Production of Forensic Evidence, which was denied by the circuit court.

¶ 4    Defendant pled guilty to first degree murder of Charles Jones, Kevin Percy, and Ashley Evans, and attempt first degree murder of Larry Ivy, Leroy Graham, and Laura Neal. According to the stipulated factual basis for the plea, on November 27, 1996, Jones, Percy, Evans, Ivy, Graham, and Neal were in a parked van when defendant approached and "pretended to sell a car radio to the occupants of the van." After handing the radio to the occupants, defendant shot Percy in the head and climbed into the van. Inside, he shot Jones in the head, fired multiple shots at the other occupants, exited the van, and continued shooting at the occupants before fleeing in another vehicle.

¶ 5    Jones, Percy, and Evans died from their gunshot wounds. Ivy was shot in the head and jaw and survived; Graham was shot in the back and survived; and Neal was not struck by any of the shots fired. Defendant was arrested on December 2, 1996 and identified by Ivy, Graham, Neal, Johnny Bell, and Tamika Evans.

¶ 6    In September 2003, following a sentencing hearing, the court declined to impose the death penalty and sentenced defendant to natural life in prison on the three murder counts and 30 years' imprisonment on each of the attempt murder counts.

¶ 7     On August 19, 2017, defendant filed a *pro se* Motion for Production of Forensic Evidence, alleging that he did not match the description given by "key eyewitness, Leroy Graham" of the shooter. He also claimed that Graham had described one shooter and one gun, but the firearm evidence showed that multiple firearms were used in the crime. He further argued that firearm evidence and audio equipment recovered at the scene, as well as his clothing and the clothing of others present at the scene was not tested for fingerprints or DNA.

¶ 8     Counsel was appointed for defendant, who filed an amended motion for DNA forensic testing pursuant to section 116-3 of the Code on March 13, 2018. The motion alleged that based on the accounts of the three victims and two eyewitnesses, the shooter's DNA should be on the "car-radio" the shooter was holding when he entered the van, handed the occupants the radio, and shot them. Thus, the presence of DNA from someone other than defendant on the radio or in the van would be relevant, potentially exculpatory, and "would significantly advance his claim of innocence."

¶ 9     Defendant further alleged that he would not have pled guilty if DNA testing had produced exculpatory results because he would have had a reasonable probability of challenging the eyewitness accounts, and that DNA testing "might be materially relevant." Defendant acknowledged that the section 116-3 standard of "a reasonable probability of acquittal in guilty plea cases" is more stringent than the material relevance standard applicable in trial cases.

¶ 10     In July 2019, the State filed a motion to dismiss, arguing that forensic testing is available when the results would significantly advance a claim of actual innocence, but only where testing would shed new light on defendant's conviction. The State also maintained that defendant had not established that the victims' clothing or swabs from the van were available for testing. As to the

recovered audio equipment, it was tested unsuccessfully for usable fingerprints, but the methods used – superglue, black powder, Ardrox, and Rhodamine – "could have" contaminated any DNA present. Also, the presence of DNA other than defendant's would not exculpate him because the shooter handled the equipment with gloves and the occupants of the van also handled the equipment prior to the shooting.

¶ 11    The court denied defendant's motion, finding defendant's claims to be "simply conjecture and wishful thinking," and that "there was no safeguard for any tampering or any preservation and any results *** would be unreliable" and "tainted."

¶ 12    On appeal, defendant contends that the court erred in denying his motion for DNA testing of the audio equipment because identity was at issue, there was a *prima facie* showing of chain of custody, and the requested DNA testing had the potential to produce new and noncumulative evidence that would have raised a reasonable probability of acquittal had the results been available prior to his plea.

¶ 13    Section 116-3 authorizes a defendant to file a motion in the circuit court where he or she was convicted "for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, *** on evidence that was secured in relation to the trial or guilty plea which resulted in his or her conviction" if the evidence was not previously subjected to the requested testing and the defendant "presents a *prima facie* case that:

(1) identity was the issue in the trial or guilty plea which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish

that it has not been substituted, tampered with, replaced, or altered in any material aspect."

725 ILCS 5/116-3(a), (b) (West 2020).

¶ 14 Identity is at issue if the offender's identity is disputed or in question. *People v. Cocroft*, 2020 IL App (1st) 180056, ¶ 21. A defendant may rely on presumptions and conclusory assertions regarding chain of custody "because the evidence sought to be tested will almost surely have been within the State's safekeeping rather than the defendant's." *Id*.

¶ 15 If the defendant presents a *prima facie* case, the court must order testing if it finds that the requested testing "employs a scientific method generally accepted within the relevant scientific community" (*id.* § 116-3(c)(2)) and that:

"the result of the testing has the scientific potential to produce new, noncumulative evidence (i) materially relevant to the defendant's assertion of actual innocence when the defendant's conviction was the result of a trial, even though the results may not completely exonerate the defendant, or (ii) that would raise a reasonable probability that the defendant would have been acquitted if the results of the evidence to be tested had been available prior to the defendant's guilty plea and the petitioner had proceeded to trial instead of pleading guilty, even though the results may not completely exonerate the defendant." *Id*. § 116-3(c)(1).

¶ 16 The "reasonable probability" standard in subsection (c)(1)(ii) governing a guilty plea is a higher threshold than the "materially relevant" standard in subsection (c)(1)(i) governing a trial. *People v. Thomas*, 2017 IL App (3d) 150542, ¶ 16. While test results are materially relevant if

they significantly advance a claim of innocence, the results in a guilty plea case would have to advance a claim of innocence so far that acquittal becomes a reasonable probability. *Id.*

¶ 17    The allegations in a section 116-3 motion are accepted as true unless contradicted by the record. *Cocroft*, 2020 IL App (1st) 180056, ¶ 21. Our review of the disposition of a section 116-3 motion is *de novo*. *Id.*

¶ 18    Here, we find that the circuit court did not err in denying defendant's forensic testing motion. The record supports the court's conclusion that defendant's claim – finding DNA other than his on the audio equipment could be potentially exonerating – was not meritorious. Defendant's assertion that "the shooter's DNA could have been transferred to the audio equipment through means other than his hands, or the shooter could have handled the audio equipment without gloves prior to the shooting" is a double-edged sword: unless the shooter manufactured the equipment by himself, it is unlikely that only he touched it before the shooting.

¶ 19    Moreover, defendant's contention that "there was no indication that anyone in the van actually handled the audio equipment besides the shooter" is contradicted by the record. Police found the equipment inside the van, and the factual basis for the plea included the fact that the shooter *handed* the equipment to the van occupants before shooting, not that he lobbed or dropped it into the van. Also, Neal told police that the shooter was wearing gloves and that the equipment was indeed handled by occupants of the van before the shooting. Under these circumstances, finding DNA other than defendant's on the equipment would be reasonably expected and not inconsistent with defendant being the shooter.

¶ 20    Defendant alleges that "[i]f the testing produces results which exclude a defendant as being the man who held the 'car-radio' or touched other surfaces inside the van immediately prior to the

crime, such a result would significantly advance his claim of innocence." However, neither result desired by defendant – finding another person's DNA on the equipment or not finding his DNA thereon – would *exclude* defendant as being "the" man who held the equipment prior to shooting when others clearly touched it and there is evidence that the shooter was wearing gloves. In other words, even if DNA evidence from the audio equipment showed that defendant's DNA was not present and/or someone else's DNA was present, we do not find a reasonable probability of acquittal existed if the case had proceeded to trial. See 725 ILCS 5/116-3(c)(1)(ii) (West 2020). The eyewitness accounts of Ivy, Graham, and Neal that defendant shot at them after handing them a radio; of Neal that the shooter wore gloves and the van occupants passed the audio equipment around; and of Tamika and Bell that defendant was present at the crime scene foreclose that possibility.

¶ 21    Accordingly, the judgment of the circuit court is affirmed.

¶ 22    Affirmed.